[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No.  12-15294
_____

D.C. Docket Nos. 8:11-cv-02323-MSS, 8:10-bk-07286-CED

In Re: KULAKOWSKI,

Debtor,

SUSAN L. KULAKOWSKI,

Plaintiff-Appellant,

versus

DONALD F. WALTON,
UNITED STATES TRUSTEE,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(November 15, 2013)

Before JORDAN, DUBINA, and BALDOCK,[*] Circuit Judges.

JORDAN, Circuit Judge:

In 2010, Susan Kulakowski filed a voluntary petition for bankruptcy under Chapter 7 of the Bankruptcy Code.  At the time, her obligations consisted primarily of consumer debt and included $136,470.75 of unsecured non-priority debt, which she sought to discharge.  The bankruptcy court granted the motion of the United States Trustee for summary judgment and dismissed the case under the abuse provisions in 11 U.S.C. §§ 707(b)(1) and 707(b)(3)(B).  In so doing, the bankruptcy court ruled that all of the income and expenses of Mrs. Kulakowski's husband should be considered in determining the ability of Mrs. Kulakowski to pay her debts.  The district court affirmed the bankruptcy court's order.

Under § 707(b)(1), a bankruptcy court "may dismiss a case filed by an individual debtor under [Chapter 7] whose debts are primarily consumer debts . . . if it finds that the granting of relief would be an abuse."  11 U.S.C. § 707(b)(1).  In making this determination, the bankruptcy court considers whether "the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse."  11 U.S.C. § 707(b)(3)(B).  Mrs. Kulakowski argues on appeal that the bankruptcy court erred when it considered the entirety of her non-filing spouse's income in its "totality of the circumstances" analysis.  For the reasons that follow, we disagree

[*] Honorable Bobby R. Baldock, Senior United States Circuit Judge for the Tenth Circuit, sitting by designation.

2

and affirm the judgment of the bankruptcy court.

## I

Mr. and Mrs. Kulakowski have been married for over 20 years.  During the course of their marriage, they have operated as a financial unit, maintaining a joint checking account, filing joint tax returns, and pooling their income and expenses. Mrs. Kulakowski does not currently earn any income, but Mr. Kulakowski deposits all of his income into the couple's joint account.  Mr. Kulakowski's monthly take-home pay is $5,491.20, about $1,100 more than the monthly household expenses of $4,338.33, which are paid through the joint account funded by Mr. Kulakowski.[1]

The Kulakowskis did not, however, operate as a financial unit for purposes of the Chapter 7 bankruptcy petition, which Mrs. Kulakowski filed individually. Although the bankruptcy court did not detail the circumstances that led to Mrs. Kulakowski's precarious financial condition, the record indicates that most of her unsecured debt was credit card debt.  *See* D.E. 69 at 2.  Significantly, a "substantial portion" of this debt was incurred for the benefit of the household and, in some instances, solely for the benefit of Mr. Kulakowski.  *See id.*

## II

---

[1] Mr. Kulakowski's net monthly pay reflects $8,497.69 in income minus $3,006.49 in payroll deductions.  The monthly expense figure includes $364.00 per month for Mr. Kulakowski's car payment.

Mrs. Kulakowski does not dispute any findings of fact. Instead, she challenges the bankruptcy court's statutory interpretation, which is generally subject to *de novo* review. *See, e.g.*, *In re Meehan,* 102 F.3d 1209, 1210 (11th Cir. 1997).

The statute at issue here, § 707(b)(3)(B), does not define "totality of the circumstances," and bankruptcy courts have considerable discretion in determining whether dismissal for abuse is appropriate under this provision. When such discretion is challenged, we review only for abuse of discretion. *See In re Piazza,* 719 F.3d 1253, 1271 (11th Cir. 2013) ("Having concluded that prepetition bad faith constitutes 'cause' for dismissal under § 707(a), we must next determine whether the bankruptcy court abused its discretion in dismissing Piazza's case based upon the court's finding of prepetition bad faith."); *Bankr. Adm'r v. Gregory*, 471 B.R. 823, 826 (E.D.N.C. 2012) ("The totality of the circumstances test used to determine whether discharging a debtor's debt would constitute abuse is reviewed for abuse of discretion."). A bankruptcy court abuses its discretion when it "applies the wrong principle of law or makes clearly erroneous findings of fact." *In re Piazza*, 719 F.3d at 1271.

### III

At issue here is the bankruptcy court's interpretation of the abuse provisions of Chapter 7 of the Bankruptcy Code. "The principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor.'" *Marrama v.*

4

*Citizens Bank of Mass.*, 549 U.S. 365, 367 (2007) (quotation marks omitted). As we have explained, § 707 "sets forth the circumstances under which a court may dismiss a Chapter 7 case or, with the debtor's consent, convert it into a Chapter 11 or a Chapter 13 case." *In re Witcher*, 702 F.3d 619, 621 (11th Cir. 2012). In keeping with the underlying aim of the Bankruptcy Code, "§ 707(b) focuses on the purpose of Chapter 7 relief under the . . . Code, primarily the issue of whether the petitioner is the honest and needy consumer debtor the Code was intended to protect." *In re Mottilla*, 306 B.R. 782, 788 (Bankr. M.D. Pa. 2004).

As noted earlier, the bankruptcy court considered all of Mr. Kulakowski's income and expenses in analyzing Mrs. Kulakowski's ability to pay her debts. The linchpin of Mrs. Kulakowski's argument is that the bankruptcy court's totality of the circumstances analysis was "flawed" because the bankruptcy court "misconstrued" another provision of the Bankruptcy Code. Specifically, Mrs. Kulakowski cites to 11 U.S.C. § 101(10A), which defines the "current monthly income" of the debtor to include "any amount paid by any entity other than the debtor . . . on a regular basis for the household expenses of the debtor." She notes that her husband's entire monthly income far exceeds her share of the household expenses, and asserts that this income can only be considered to the extent that it is used "for the household expenses of the debtor," as stated in § 101(10A) of the Code.

We recently clarified that bankruptcy courts may consider the debtor's "ability to pay his or her debts" when determining whether the totality of the circumstances implicates abuse. *See In re Witcher*, 702 F.3d at 623 (observing that the phrasing of § 707(b)(3)(B) "surely intended to include the debtor's ability to pay his or her debts"). A number of bankruptcy courts have applied this principle to encompass the income of a non-debtor spouse. *See, e.g.*, *In re Harter*, 397 B.R. 860, 865 (Bankr. N.D. Ohio 2008) ("[B]ankruptcy courts take into account the income of a debtor's non-filing spouse or co-habitant because it is necessary to evaluate a debtor's ability to repay her financial obligations.") (quotation marks omitted); *In re Engskow*, 247 B.R. 314, 317 (Bankr. M.D. Fla. 2000) ("In determining the totality of circumstances, it is appropriate to consider the spouse's income."). Mrs. Kulakowski notably does not contest the consideration of her husband's income as part of the totality of the circumstances inquiry. She instead argues that the bankruptcy court should have limited its consideration to the amount of her husband's income contributed for her household expenses.

In analyzing the Bankruptcy Code, we begin with the text of the relevant provision: "We analyze the language of the provision at issue, the specific context in which that language is used, and the broader context of the statute as a whole." *United States v. Zuniga-Arteaga*, 681 F.3d 1220, 1223 (11th Cir. 2012) (citation omitted). Where the provision "has a plain and unambiguous meaning with regard

6

to the particular dispute in the case and the statutory scheme is coherent and consistent," we need go no further and confine our analysis to the plain language of the statute. *Id*.

The threshold problem with Mrs. Kulakowski's argument is that the term "current monthly income" does not appear anywhere in the Chapter 7 abuse provisions—§§ 707(b)(1) & 707(b)(3)(B)—that govern this case. Nor is the term made a part of the totality of the circumstances test.

The term "current monthly income" figures largely in the so-called means test set forth in a neighboring provision of § 707. *See* 11 U.S.C. § 707(b)(2)(A)(i). Congress' decision to include "current monthly income" as an explicit consideration under § 707(b)(2) but not to list it under § 707(b)(3) raises a rebuttable presumption that the omission from § 707(b)(3) was intentional. *See United States v. Slaughter*, 708 F.3d 1208, 1216 (11th Cir. 2013) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)). Unlike the situation we encountered in *Hope v. Acorn Financial, Inc.*, 731 F.3d 1189, ____ (11th Cir. 2013) (page citations unavailable), the presumption here is persuasive. Indeed, we have concluded that the totality of the circumstances test and the means test are not

7

completely co-extensive. *See In re Witcher*, 702 F.3d at 623 (explaining that one's ability to pay debts is a factor under the means test does not preclude a bankruptcy court from also considering it under the totality of the circumstances analysis).

We are not persuaded by Mrs. Kulakowski's argument that the "specific and detailed" provisions of § 707(b)(2) pertaining to "current monthly income" overcome and subsume the broad and general language of § 707(b)(3)(b). "Although specific statutory provisions often trump more general ones, this presumption is not an absolute rule. Rather, the general/specific canon is simply an indication of statutory meaning that can be overcome by textual indications that point in the other direction." *In re Piazza*, 719 F.3d at 1267 (quotation marks omitted). Few if any tests are as open-ended as the totality of the circumstances. The inherent flexibility and wide breadth of the totality of the circumstances inquiry, coupled with Congress' decision not to include "current monthly income" as an explicit limiting factor under § 707(b)(3)(b), constitute sufficient textual evidence to overcome the general/specific canon. *See Owusu-Ansah v. Coca-Cola Co.*, 715 F.3d 1306, 1312 (11th Cir. 2013) ("[C]ommon sense is not irrelevant in construing statutes[.]"). We cannot gainsay the language of § 707(b)(3)(B) and add words that Congress chose to omit such that the totality of the circumstances inquiry would be limited to consideration of a debtor's "current monthly income." *See Harris v. Garner*, 216 F.3d 970, 976 (11th Cir. 2000) ("We will not do to the

statutory language what Congress did not do with it, because the role of the judicial branch is to apply statutory language, not to rewrite it.").

## IV

Having rejected Mrs. Kulakowski's statutory-interpretation arguments, we turn to factual and equitable considerations. As we and other circuits have long observed, "[t]he cornerstone of the bankruptcy courts has always been the doing of equity." *In re Waldron*, 785 F.2d 936, 941 (11th Cir. 1986). *Accord In re Am. Capital Equip., LLC*, 688 F.3d 145, 157 (3d Cir. 2012) (underscoring the Bankruptcy Code's objective of "achieving fundamental fairness and justice"); *In re Marrama*, 430 F.3d 474, 477 (1st Cir. 2005) ("[A] bankruptcy court sitting in equity is duty bound to take all reasonable steps to prevent a debtor from abusing or manipulating the bankruptcy process to undermine the essential purposes of the Bankruptcy Code, including the principle that all the debtor's assets are to be gathered and deployed in a bona fide effort to satisfy valid claims."); *In re Beck Indus., Inc.*, 605 F.2d 624, 634 (2d Cir. 1979) (Friendly, J.) ("We need not belabor the point that a bankruptcy court sits as a court of equity[.]"). It follows that both Chapter 7 of the Code and § 707(b) should be applied with the aim of effectuating justness and equity. *See In re Mottilla*, 306 B.R. at 788.

The Kulakowskis have been married for 21 years, share a joint checking account, file joint tax returns, jointly own their homestead, and pool their income

9

and expenses. And, significantly, Mrs. Kulakowski incurred credit card debt during her marriage stemming in large part from charges that benefited the household generally and her husband specifically. Viewing this set of facts in the aggregate, we cannot say that the bankruptcy court, which analyzed the record under the broad framework of the totality of the circumstances test, abused its discretion in dismissing Mrs. Kulakowski's Chapter 7 petition. *See In re Piazza*, 719 F.3d at 1271 (underscoring the "inherently discretionary nature" of the totality of the circumstances test for determining bad faith under 11 U.S.C. § 707(a)). *See also In re Rasbury*, 24 F.3d 159, 168 (11th Cir. 1994) ("the abuse of discretion standard allows 'a range of choice for the . . . court, so long as that choice does not constitute a clear error of judgment'").

Although we sympathize with Mrs. Kulakowski's perception that the bankruptcy court paternalistically penalized her for having a wealthy husband, we also recognize the bankruptcy court's overriding mandate to effectuate fairness and justice in applying the Bankruptcy Code. *See In re Waldron*, 785 F.2d at 941. The bankruptcy court did not abuse its discretion in finding that it would be inequitable to disregard the income of Mr. Kulakowski, income which traditionally directly benefited Mrs. Kulakowski or indirectly benefited her by enriching her household, and which might instead just as readily serve to repay her creditors. Nor would fairness have been served by ignoring the fact that a substantial part of Mrs.

10

Kulakowski's debt benefitted her husband or her household at large.  The bankruptcy court could reasonably conclude that allowing a bankruptcy to proceed under these facts could have created a de facto windfall for Mrs. Kulakowski at the expense of her creditors, a result that would run counter to the principles of equity and justness that underlie the Bankruptcy Code.

## V

We conclude by emphasizing that our ruling is limited to the particular set of facts before us and our review of the bankruptcy court's ruling through the prism of the highly deferential abuse of discretion standard.  We do not opine on how much weight, if any, a non-debtor's spouse's income should generally carry in a bankruptcy court's § 707(b)(3)(B) analysis, nor do we suggest that a bankruptcy court's discretion in applying this provision is unlimited.

Given the nature of Mrs. Kulakowski's debt and the financial relationship between the Kulakowskis, however, we hold that the bankruptcy court did not abuse its discretion in applying the totality of the circumstances test.  The bankruptcy court's dismissal of Mrs. Kulakowski's Chapter 7 bankruptcy petition is affirmed.

**AFFIRMED**.